# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORLA MARIE BETTENCOURT,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:25-cv-00242-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 10, 14) |

Plaintiff Norla Marie Bettencourt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by leaving a period of time unadjudicated; by not addressing Plaintiff's impairments in the residual functioning capacity; by not adequately explaining the rejection of certain medical opinions; by not providing clear and convincing reasons for rejecting Plaintiff's testimony; and by finding that the Commissioner met his burden at Step Five.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

1

# I.

# BACKGROUND

**A.      Procedural History**

On March 18, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on March 11, 2021.  (ECF No. 9, Administrative Record ("AR"), 21.)  Plaintiff's application was initially denied on September 12, 2022, and denied upon reconsideration on November 29, 2022.  (Id.)  Plaintiff requested before a hearing before an ALJ.  On March 5, 2024, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ.  (Id.)  Plaintiff and vocation expert ("VE") Linda M. Ferra testified.  (Id.)  On April 17, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled.  (AR 40.)  On February 4, 2025, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

**B.      The ALJ's Findings of Fact and Conclusions of Law**

In the decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2028, and that Plaintiff had had not engaged in substantial gainful activity since March 11, 2021, the alleged onset date.  (AR 24.)  Since March 11, 2021, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine.  (Id.)  Beginning on the established onset date of disability, February 9, 2022, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; left shoulder rotator cuff tendonitis; and neuropathy secondary to left cubital tunnel syndrome.  (Id.)  However, the ALJ found that since March 11, 2022, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 26.)

After considering the entire record, the ALJ determined that two calculations of residual functional capacity ("RFC") were required.  First, the ALJ found that prior to February 9, 2022, Plaintiff had the RFC to perform medium work as defined in 20 CFR 404.1567(c) except that she could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, and crouch, occasionally crawl.  (AR 27-28.)  Beginning on February 9,

2022, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, and crouch, occasionally crawl, frequently reach overhead with the bilateral upper extremities. (AR 28.)

Initially, the ALJ found that Plaintiff was capable of performing her past relevant work as a salesperson, household appliances. (AR 38.) In the alternative, the ALJ, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 38-39.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from March 11, 2021, through the date of the ALJ's decision, April 17, 2024. (AR 40.)

Plaintiff timely sought review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 6, 7, 8.) Thereafter, the parties filed their briefs on the matter.[1] (ECF Nos. 10, 14.)

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of her position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.

claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of

1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

5

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in five ways. First, Plaintiff argues that the ALJ left an unadjudicated period in Step Four. (ECF No. 10, p. 7-8.) Second, Plaintiff asserts that the ALJ did not address the combination of Plaintiff's impairments in the RFC. (Id. at pp. 8-12.) Third, Plaintiff contends that the ALJ did not provide sufficient explanation for the rejection of certain medical opinions. (Id. at pp. 12-17.) Fourth, Plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting or rejecting Plaintiff's subjective testimony regarding symptoms. (Id. at pp. 17-18.) Fifth, Plaintiff claims that the Commissioner failed to meet his burden at Step Five of the evaluation. (Id. at pp. 18-19.)

The Commissioner opposes, arguing that substantial evidence supports the ALJ's opinion.

(ECF No. 14.) The Court agrees.

The Court will address Plaintiff's arguments in the order it views to be the most logical.[4]

### A.    Assessment of Plaintiff's Testimony

The Court quotes Plaintiff's argument in full: "Here the ALJ is unclear as to which piece of medical evidence contradicts Ms. Bettencourt's statements. The ALJ has not provided specific citations. As discussed above, the doctor's records and evaluations appear clear and consistent with the MRIs. Therefore, the ALJ has not provided clear and convincing reasons to disregard Ms. Bettencourt." (ECF No. 10, p. 18.) Because Plaintiff has given only a general argument, the Court will likewise generally consider the argument.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's

---

[4] Plaintiff's RFC and Step Five arguments depend on whether the ALJ committed error in his analysis of Plaintiff's subjective testimony and the medical opinions.

7

subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

Though Plaintiff's argument for this claim is sparse, the Court construes, from other arguments, that she takes issue in particular with her testimony regarding her cervical radiculopathy (also known as a pinched nerve) and the resulting pain. (See ECF No. 10, pp. 10-12.) In recounting Plaintiff's testimony regarding her symptoms, the ALJ observed that Plaintiff alleged that, from when she filed disability, she had a pinched nerve in her neck and had pain rotating her neck. (AR 28, citing Ex. 1E/2.) Plaintiff also described being sore and tired accompanied by headaches that prevented her from carrying out a normal workday. (Id.) Plaintiff also stated that she had limitations in lifting, feeling stiff, and being able to drive for only two hours at a time but feeling very sore afterward. (Id.) The ALJ noted that Plaintiff described numbness and tingling in her arms. (AR 28-29.) At one point, Plaintiff discussed a burning tingle all the way down her arm such that even holding a phone was problematic. (AR 29.) Plaintiff testified to shooting pain down her harms, that numbness/pain wakes her in the night, and that she has a hard time focusing. (Id.) Because of this pain, Plaintiff alleged problems with daily tasks such as washing dishes, cleaning herself, and anything else requiring the use of her arms. (Id.) At the hearing, Plaintiff largely testified to the same or similar allegations of symptoms and pain. (AR 29-30.)

Though the ALJ found that Plaintiff's determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR

30.)  Initially, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence, which reflected routine and conservative treatment.  (Id.)

More specifically, from her chiropractic records, the ALJ noted that Plaintiff had generally normal physical exams, negative x-rays of the bilateral shoulders in November 2021, and an MRI in January 2022, revealed some soft tissue edema.  (Id.)  Based on Plaintiff's testimony, the ALJ found that Plaintiff was performing heavy work prior to February 9, 2022, by working at the ranch and had at that time sought minimal treatment with minimal objective findings.  (Id.)  However, the ALJ found that following February 9, 2022, Plaintiff had a motor vehicle accident which subsequently affected her RFC.

Following the accident, the ALJ observed that Plaintiff reported shoulder pain soon after the accident and in the months following.  (Id.)  In early March 2022, Plaintiff had an MRI that showed moderate disc osteophyte complex with narrowing of the spinal canal at C6-C7 and moderate to sever narrowing of the right C7 neuroforamen.  (Id.)  In mid-March 2022, Plaintiff reported neck pain going down her upper extremities, and Plaintiff's primary care provider referred for further evaluation.  (Id.)

Plaintiff saw a doctor at the Darroch Brain and Spine Institute in May 2022, reporting sudden onset of intermittent right shoulder pain with radiation down her wrist.  (AR 31.)  Plaintiff also reported pain in her left shoulder recently.  (Id.)  Plaintiff also reported headaches secondary from her symptoms and numbness and tingling.  (Id.)  Plaintiff stated that her current pain level was 6/10 with pain worsening with sitting, diving, prolonged walking, and staying inactive.  (Id.)  Physical examination demonstrated a decreased rage of motion  in the cervical spine with 50 percent rotation to the right and left.  (Id.)  She was found to have post-traumatic cervical facet pain and possibly some right cervical radiculitis or radiculopathy.  (Id.)  The biggest problem reported was mechanical neck pain.  (Id.)  Plaintiff was prescribed hydrocodone-acetaminophen.  (Id.)  In June 2022, an EMG (electromyography) was performed and was "normal with no evidence of an entrapment neuropathy nor of a cervical radiculopathy bilaterally."  (Id., citing Ex. 4F.)

In July 2022, Plaintiff received initial diagnostic bilateral cervical medial branch blocks at C3-C4-5 and C5-6. (Id.) Thereafter, Plaintiff followed up with a spine specialist a week later and reported 80 percent reduction in neck, shoulder, and upper arm pain. (Id.) She reported a pain level of 3/10 and noted improved range of motion for about 48 hours. (Id.) Confirmatory blocks at the same level were recommended and she was given a refill of hydrocodone-acetaminophen. (Id.)

In November 2022, Plaintiff was prescribed Lyrica for neck pain radiating down the upper extremities, and on December 20, 2022, Plaintiff received bilateral confirmatory cervical medical branch blocks at C3-4, C4-5, and C5-6. (Id.) In January 2023, Plaintiff continued to have mechanical/axial pain in the cervical spine with limited range of motion but with stable pain level rating of 3/10. (Id.) She was prescribed hydrocodone-acetaminophen again with no changes to medication. (Id.) In February 2023, another EMG was ordered and showed C7 radiculopathy left greater than right, and left cubital tunnel syndrome. (Id.) In April 2023, Plaintiff was authorized for a cervical epidural steroid injection, and she was continued on hydrocodone-acetaminophen through June 2023. (Id.) "She was counseled in July 2023 regarding a discrepancy in her urine drug test and was prescribed a naloxone nasal spray." (Id.) However, she was continued on hydrocodone-acetaminophen through September 2023. (Id.)

In October 2023, Plaintiff reported pain as an 8/10 but had no change to exam findings compared to all prior visits. (AR 32.) She was continued on hydrocodone-acetaminophen through December 2023. (Id.) In November, Plaintiff's primary care doctor prescribed her Cymbalta for her radiating neck pain. (Id.) An MRI of the cervical spine dated December 1, 2023, showed degenerative disc disease and spondylitic changes at C6-C7 and mild narrowing of the spinal canal in both neuroforamina. (Id., citing Ex. 12F/2-3.)

In January 2024, Plaintiff reported her pain as 8/10, but no changes were made to her pain medication regime. (Id.) In March 2024, another EMG was ordered of the lower extremities due to complaints of leg pain. (Id.)

The ALJ found that:

> Overall, the claimant had a new severe impairment related to her

> cervical spine and upper extremities, and continued to report uncontrolled symptoms of pain despite narcotic pain medication. She was conservative treated, however, and had minimal objective findings throughout the record. The undersigned has assigned light exertion during this period with frequent reaching overhead with her upper extremities. The postural activities of climbing ladders, ropes of scaffolds, and crawling, were also reduced to occasional from frequent, to address the cervical impairment symptoms. Based on the claimant's treatment history, as well as minimal objective findings, the undersigned finds that further limitations are not warranted.

(AR 32.)

As is clear, the ALJ identified Plaintiff's testimony from both the medical record and at the administrative hearing. The ALJ then engaged in a lengthy discussion of the medical record that involved Plaintiff's pinched nerve and resulting pain. Based on the objective findings in those records, and that overall Plaintiff received conservative treatment, see Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), the ALJ discounted or rejected certain portions of Plaintiff's testimony. Unambiguously, the ALJ agreed with Plaintiff, and the medical record, that she should be limited to light exertion with further limitations on reaching overhead and postural activities "to address the cervical impairment symptoms." (AR 32.) By reaching this conclusion, it is obvious that the ALJ rejected the remaining portion of Plaintiff's testimony.

Plaintiff has not otherwise argued how the ALJ erred in his analysis, and the Court will not engage in a *sua sponte* analysis of issues not raised in the briefing.

Based on the foregoing, the Court finds that the ALJ's rationale is clear enough that it has the power to convince. Smartt, 53 F4th at 499. The ALJ did not err.

**B.    Assessment of Medical Opinions**

Plaintiff takes issue with the ALJ's assessment of three medical opinions: Kyle Heron, M.D.; Manuel L. Canga, M.D.; and Pablo F. Duque, D.C. (ECF No. 10, pp. 12-17.) The Court addresses each in turn.

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the updated

regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record, " where contradictory evidence is present. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must, at the very minimum, explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how he considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### A.    Kyle Heron, M.D.

The ALJ summarized Dr. Heron's February 26, 2024 opinion as follows:

> On February 26, 2024, Kyle Heron, M.D., completed a 'Medical Opinion RE: Ability to Do Work-Related Activities (PHYSICAL)' in which he opined that the claimant can lift and carry 10 pounds occasionally and 10 to 20 pounds frequently, can sit for 15 minutes before changing position, can stand for 15 minutes before changing position, can stand and walk about two to four hours during an eight-hour workday, can sit about two to four hours during an eight-hour workday, must walk around for 15 minutes every 15 minutes, needs the opportunity to shift at will from sitting or standing/walking, and will sometimes need to lie down at unpredictable intervals every couple hours during a work shift for an unspecified duration. Dr. Heron also opined that the claimant can occasionally twist, stoop, crouch, and climb stairs and ladders, and should avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, doors, dusts, gases, poor ventilation, and hazards. Dr. Heron opined that the claimant's reaching, handling, fingering, feeling, and pushing/pulling are affected by the impairment as she has to constantly shake her arms to stop them from going to sleep because her arms tingle and are weak. Dr. Heron further opined that the claimant's impairments or treatment would cause her to be absent from work at least four times per month on average (Ex. 13F).

(AR 34.)

In discussing the basis Dr. Heron gave for his opinion, the ALJ observed that "Dr. Heron listed a diagnosis of cervical spondylosis, clinical findings of C6-C7 severe narrowing, symptoms

and signs of mechanical neck pain radiating down the arms to the fingertips (Ex. 13F/1)." (Id.) Yet, the ALJ found that Dr. Heron did not clearly explain what medical findings supported the limitations. (Id.) For example, "Dr. Heron noted that 'nerve damage' supports the limitations described above (Ex. 13F/2); it is unclear if this means all limitations from questions one through six or only question six on this checkbox/circle form that has few fill-in-the-blank questions." (Id.) As to the environmental factors and hazards, the ALJ observed that "Dr. Heron stated, 'Changes cause pain and discomfort so easily distracted' and noted that the claimant drops things (Ex. 13F/3)." (Id.)

Regarding the supportability of Dr. Heron's opinion, the ALJ observed that the February 26, 2024 opinion was not fully supported by Dr. Heron's other treatment notes. (Id., citing Exs. 6F/10-12; 10F/2-21.) Specifically, the ALJ observed that "[e]xams at these visits show very limited extension and rotation in the cervical spine, tenderness to palpation of the bilateral cervical facet columns, and some slightly altered sensation in the right arm at C6-7 distribution at other treatment visits (Exs. 6F/8, 11; 10F/5, 8, 12, 16, 20)." (Id.)

For consistency, the ALJ found that Dr. Heron's opinion was "not very consistent with the other medical evidence of record." (Id.) The ALJ then contrasted Dr. Heron's opinion with the consultative examination from August 2022. (Id., citing Ex. 7F/4-5.) Furthermore, the ALJ noted that there was no objective evidence to support any of Dr. Heron's environmental limitations or limitations regarding sitting, standing, walking, lying down, or absenteeism. (AR 35.) The ALJ found that there were no objective or abnormal findings that Plaintiff should be limited in her ability to handle, finger, or feel. (Id.)

The ALJ then addressed the persuasiveness of all three medical opinions Plaintiff raises in this social security review, finding that "the opinions at exhibits 13F, 15F, and 16F are completely unpersuasive for the period prior to February 9, 2022, based on the limited and conservative treatment, a benign left shoulder MRI, negative shoulder x-rays, and generally normal physical exams (Exs. 2F/10-19, 41-43; 14F)." (AR 37.) Following February 9, 2022, the ALJ found that:

> [Plaintiff] has some postural limitations due to her degenerative disc disease but not to the degree as opined by Drs. Heron, Canga, and Duque. For the entire period at issue, there is no objective

evidence to support any environmental limitations, any need to shift at will from sitting or standing/walking, any need to lie down at unpredictable intervals, or any significant absenteeism. There is no objective evidence to warrant any significant sitting or standing/walking limitations. There is no objective evidence of any abnormal objective findings of the hands/fingers that would limit the claimant's ability to handle, finger, or feel. Beginning on February 9, 2022, these opinions are of limited persuasiveness as they generally contain excessive limitations that are not well supported by limited explanations or treatment notes from opining doctors and they are not consistent with benign findings at the consultative examination.

(Id.)[5]

Plaintiff first takes issue with the ALJ observing that Dr. Heron listed a diagnosis of "cervical spondylosis, clinical findings of C6-C7 severe narrowing, symptoms and signs of mechanical neck pain radiating down the arms to the fingertips," but nonetheless found that Dr. Heron did not clearly explain the medical findings that supported the limitations. In Plaintiff's view, there is no incongruity between the diagnosis from Dr. Heron and his opinion.

Plaintiff's argument conflates diagnosis with medical findings. Though a doctor may diagnose a plaintiff with a condition, the medical findings to support such a diagnosis (or other limitations) are separate and apart. To that end, the ALJ's opinion should be read that, notwithstanding Dr. Heron's *diagnosis*, Dr. Heron did not provide or clearly explain what *medical findings* supported his offered limitations. Indeed, the ALJ gave an example of whether Dr. Heron meant for "nerve damage" to support all limitations described in his opinion. (AR 34.)

In response to this example, Plaintiff argues that the ALJ should have been required to serve an interrogatory to Dr. Heron for clarification, as opposed to "disregard[ing] the entire evaluation." Plaintiff cites to no statute, regulation, or other authority for this proposition. Rather, the Court finds that ALJ sufficiently complied with the regulations by assigning Dr. Heron's opinion weight and discussing the supportability and consistency for this determination.

Plaintiff's argument that it is "unclear" how the ALJ was using the treatment notes from other exams is patently without merit. Plaintiff asserts that it is not clear if the "ALJ is objecting to Dr. Heron or using this evidence to support his opinion." (ECF No. 10, p. 15.) Rather, as

_____
[5] The Court will not repeat this finding in its discussion on the other medical opinions, but this finding from the ALJ applies equally to Drs. Canga, and Duque.

discussed above, the ALJ clearly, in the sentence prior, stated that "Dr. Heron's opinion is not fully supported by his treatment notes (Exs. 6F/10-12; 10F/2-21)." (AR 34.) In the next sentence, the ALJ gives further explanation of what is actually discernable from these treatment notes: "Exams at these visits show very limited extension and rotation in the cervical spine, tenderness to palpation of the bilateral cervical facet columns, and some slightly altered sensation in the right arm at C6-7 distribution at other treatment visits (Exs. 6F/8, 11; 10F/5, 8, 12, 16, 20)." (Id.) Therefore, Plaintiff's argument regarding lack of clarity is a stretch.

Plaintiff takes a similar tact with the ALJ's discussion of the August 2022 consultative examination, which is not persuasive.

Finally, Plaintiff asserts that the ALJ of offered "a series of lay questions. The ALJ throws stones at Dr. Heron's professional opinion without medical support." (ECF No. 10, p. 15.) This pronouncement is unavailing. The ALJ explicitly took the time to thoroughly go through Dr. Heron's opinion and medical record pertaining to Dr. Heron. The ALJ then compared and contrasted the February 26, 2024 opinion with Dr. Heron's other records and other records in the medical evidence. The ALJ gave a sufficient explanation of the supportability and consistency of Dr. Heron's opinion in rejecting certain portions thereof.

**B.    Manuel L. Canga, M.D.**

The ALJ summarized Dr. Canga's March 4, 2024 opinion as follows:

> On March 4, 2024, Manuel L. Canga, M.D., also completed a 'Medical Opinion RE: Ability to Do Work-Related Activities (PHYSICAL)' and opined that the claimant can lift and carry ten pounds on an occasional basis, can stand and walk up to about two hours in an eight-hour workday, can sit for about two hours during an eight-hour workday, can sit for 15 minutes before changing position, can stand for 15 minutes before changing position, must walk around for 15 minutes every 15 minutes, needs the opportunity to shift at will from sitting or standing/walking, and will sometimes need to lie down at unpredictable intervals every two hours or less during a work shift. Dr. Canga also opined that the claimant can occasionally twist, stoop, crouch, climb stairs and ladders, and should avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, doors, dusts, gases, poor ventilation, and hazards. Dr. Canga opined that the claimant's reaching, handling, fingering, feeling, and pushing/pulling are affected due to weakness and neuropathy. Dr. Canga further opined that the claimant's impairments or treatment would cause her to be absent from work at least four times per

month on average.  In Dr. Canga's opinion, the claimant's current diagnoses caused functional limitations beginning in 2022.

(AR 35.)

For the basis of his opinion, "Dr. Canga noted diagnoses of cervical radiculopathy and lumbar radiculopathy, clinical findings from an MRI of the cervical spine and EMG, and symptoms and signs of radiating neck pain, pain in the arms to fingertips, weakness in the legs (Ex. 15F/2)."  (Id.)

In terms of supportability, the ALJ found that "Dr. Canga has frequently indicated diagnoses of cervical radiculopathy but none of his treatment notes reveal a diagnosis of lumbar radiculopathy (Exs. 2F/5, 7, 9, 11, 13, 15, 17, 19; 9F/3, 5, 7, 9, 11; 15F/6)."  (Id.)  Moreover, the ALJ observed that "lumbar radiculopathy is a symptom, not an impairment," and thus, "lumbar radiculopathy is not a medically determinable impairment."  (Id.)  Furthermore, Dr. Canga listed "EMG" as the medical findings that support his opinion regarding limitations, but the ALJ found that "it is unclear if this means all limitations from questions one through six or only question six on this checkbox/circle form that has few fill-in-the-blank questions (Ex. 15F/3)."  (Id.)

Continuing with supportability, the ALJ noted that Dr. Canga indicated that the limitations regarding environmental factors and hazards was supported by "medical findings of coordination, neuropathy, and being very sensitive to climate change and temperature."  (Id.)  "Dr. Canga further noted that strength, coordination, and anything repetitive are affected by the impairment and no device will help (Ex. 15F/4)."  (Id.)  However, the ALJ found that "Dr. Canga's treatment notes only reveal cervical radiculopathy on a regular basis (Exs. 2F/4-19; 9F: 15F/5-6).  The claimant had normal exams of the neck, musculoskeletal system, and neurological system at treatment visits with Dr. Canga (Exs. 9F/2, 4, 6, 8, 10; 15F/5)."  (Id.)

Regarding consistency, the ALJ found that Dr. Canga's opinion was not very consistent with the other medical evidence in the record that revealed that Plaintiff "did have very limited extension and rotation in the cervical spine, tenderness to palpation of the bilateral cervical facet columns, and some slightly altered sensation in the right arm at C6-7 distribution on exams at other treatment visits (Exs. 6F/8, 11; 10F/5, 8, 12, 16, 20)."  (Id.)  Notably, the ALJ observed that

"Plaintiff's sensation was intact to light touch and pinprick throughout the bilateral upper extremities at the consultative examination in August 2022.  She had trace 1+/4 deep tendon reflexes in the bilateral bicep reflexes."  (Id.)

The ALJ the compared and contrasted Dr. Canga's opinion with the consultative examiner. (AR 35-36, citing Ex. 7F/4-5.)  As with Dr. Heron, the ALJ found that

> There is no objective evidence to support any environmental limitations, any need to shift at will from sitting or standing/walking, any need to lie down at unpredictable intervals, or any significant absenteeism.  There is no objective evidence to warrant any significant sitting or standing/walking limitations. There is no objective evidence of any abnormal objective findings of the hands/fingers that would limit the claimant's ability to handle, finger, or feel.

(AR 36.)

Plaintiff argues that the ALJ's opinion is contradictory.  Plaintiff misreads the ALJ's opinion.  The ALJ began with noting what Dr. Canga used as his basis for his medical opinion; thereafter, the ALJ specifically addressed the supportability analysis of Dr. Canga.  For example, the ALJ clearly took issue with the supportability of Dr. Canga's opinion with regard to lumbar radiculopathy and the use of EMG.  For lumbar radiculopathy, the ALJ found that none of the treatment notes revealed a lumbar radiculopathy diagnosis and that in reality, lumbar radiculopathy is a symptom.  Moreover, the ALJ could not be sure of EMG referred as a medical finding for one symptom or for the entire opinion.  Therefore, Plaintiff's argument on this front is unpersuasive.

Plaintiff then takes issue with the ALJ's consistency analysis, arguing that the ALJ provided his own medical opinion.  This is overblown.  The ALJ outlined the medical evidence, favorable and not to Plaintiff, regarding Plaintiff's cervical radiculopathy—quoted heavily above. In addition, Plaintiff also seemingly takes the curious position that the only type of discussion an ALJ should have is regarding medical evidence that would negate or contradict a medical opinion. However, the regulations provide that an ALJ is to consider *supportability* and *consistency* in making determinations on medical opinions.  Unlike other aspects of social security review (*e.g.*, the evaluation of a plaintiff's testimony), in assessing medical opinions, the ALJ is tasked with objectively discussing supportability and consistency—whether it is seemingly in favor or against

18

a determination of disability.

Finally, Plaintiff has not demonstrated that the ALJ interpreted raw data.  The quoted material Plaintiff directs the Court to excludes that the ALJ's cited to Exhibits 6F/8, 11; 10F/5, 8, 12, 16, and 20, which in context clearly drove the discussion.  (AR 35.)

**C.      Pablo F. Duque, D.C.**

The ALJ summarized Dr. Duque's March 13, 204 medical opinion as follows:

> On March 13, 2024, Pablo F. Duque, D.C., completed a 'Medical Opinion RE: Ability to Do Work-Related Activities (PHYSICAL)' in which he opined that the claimant can lift and carry less than ten pounds occasionally and frequently, can stand and walk less than two hours in an eight-hour workday, can sit less than two hours in an eight-hour workday, can sit for ten minutes before changing positions, can stand for five minutes before changing positions, must walk around for five minutes every ten minutes, needs the opportunity to shift at will from sitting or standing/walking, and will sometimes need to lie down at unpredictable intervals during a work shift depending on the onset of pain and weakness.  Dr. Duque also opined that the claimant can never twist, stoop, crouch, or climb stairs and ladders, should avoid even moderate exposure to wetness, humidity, and noise, and should avoid all exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards.  Dr. Duque opined that the claimant's reaching, handling, fingering, feeling, and pushing/pulling are not affected by the impairment.  Dr. Duque further opined that the claimant's impairments or treatment would cause her to be absent from work more than four times per month on average and that the claimant's current diagnoses have caused functional limitations with a gradual onset in the 'last couple of years' (Ex. 16F).

(AR 36.)

The ALJ noted that Dr. Duque listed that, as the basis for his opinion, Plaintiff had diagnosis of cervical and lumbosacral radiculopathy as well as clinical findings of decreased range of motion, decreased motor function, radiating paresthesia/radiculopathy in the extremities occurring at least 70 percent of the time (Ex. 16F/2)."  (Id.)  Furthermore, "Dr. Duque indicated medical findings including weakness, a positive nerve conduction velocity, and "MRI pending" support the limitations described above (Ex. 16F/3)."  (Id.)

For supportability, the ALJ began by noting that the findings of weakness, positive nerve conduction velocity, and "MRI pending," were meant to support "all limitations from questions one through six or only question six on this checkbox/circle form that has few fill-in-the-blank

questions." (Id.) In addition, the ALJ observed that "Dr. Duque's statement that the claimant has weakness, radiating pain, and paresthesia as noted on NCV is internally inconsistent with his opinion that the claimant's manipulative activities are not affected (Ex. 16F/3)." (Id.) "Dr. Duque responded that the claimant's condition is unstable and unpredictable when asked how the environmental factors impair activities and identify hazards to be avoided; Dr. Duque's response is a conclusory statement for which he provides no objective support (Ex. 16F/4)." (Id.) Significantly, the ALJ found that "Dr. Duque's treatment notes provide no support for any limitations other than to indicate the dates he provided treatment to the claimant, with the last treatment being one year before his opinion (Ex. 14F)." (Id.)

Regarding consistency, the ALJ found that Dr. Duque's opinion was not very consistent with the other medical evidence of record. (Id.) The ALJ then discussed in detail the medical evidence that was not congruent with Dr. Duque's opinion:

> Prior to February 9, 2022, the claimant had limited treatment, a benign left shoulder MRI, negative shoulder x-rays, and generally normal physical exams (Ex. 2F/10-19, 41-43). Beginning on February 9, 2022, the claimant has complained of neck pain radiating to the arms and bilateral shoulder pain to other treatment providers (Exs. 2F/4-9; 6F/6-8, 10-12; 9F/2-5, 8-11; 10F). She has had very limited extension and rotation in the cervical spine, tenderness to palpation of the bilateral cervical facet columns, and some slightly altered sensation in the right arm at C6-7 distribution at these visits (Exs. 6F/8, 11; 10F/5, 8, 12, 16, 20). At the consultative examination in August 2022, the claimant's sensation was intact to light touch and pinprick throughout the bilateral upper extremities. She had trace 1+/4 deep tendon reflexes in the bilateral bicep reflexes. The consultative examiner could not detect brachioradialis or triceps reflexes on either side. However, the claimant had normal 5/5 strength in the bilateral upper extremities including grip strength. She had a normal exam of the chest/lungs. Her coordination, station, and gait were normal (Ex. 7F/4-5). An EMG in March 2023 that showed C7 radiculopathy and left cubital tunnel syndrome (Ex. 8F). There is no objective evidence to support any environmental limitations, any need to shift at will from sitting or standing/walking, any need to lie down at unpredictable intervals, or any significant absenteeism. There is no objective evidence to warrant any significant sitting or standing/walking limitations. There is no objective evidence of any abnormal objective findings of the hands/fingers that would limit the claimant's ability to handle, finger, or feel.

(AR 36-37.)

Plaintiff's only argument here is that she believes Dr. Duque's opinion is consistent with

other medical opinions (but she does not provide citations).  Rather, as demonstrated amply above, the ALJ discussed consistency with the medical record in great detail, leading him to find that the opinion of Dr. Duque as having "limited persuasiveness."  (AR 37.)

In sum, the Court finds that the ALJ adequately discussed the supportability and consistency that undergirded his determination of the persuasiveness of Drs. Heron, Canga, and Duque.  In other words, substantial evidence supports the ALJ's findings; the ALJ did not err.

### C.      Assessment of the RFC

Having found that the ALJ properly assessed Plaintiff's testimony and the medical opinions from Drs. Heron, Canga, and Duque, the Court finds that Plaintiff's argument regarding the ALJ's assessment of Plaintiff's RFC to be largely without merit.  In particular, Plaintiff's argument presupposes the ALJ erred in his assessment of Plaintiff's testimony and the medical opinions.  (ECF No. 10, pp. 8-12.)  What remains from Plaintiff's argument is the incorporation of an opinion by Dale H. Van Kirk, M.D., which the ALJ found to be partially persuasive.  (AR 33.)

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original).  In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*."  Id. (emphasis in original).  An ALJ assesses an RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs").  Id.

Plaintiff specifically takes issue with the fact that Dr. Van Kirk determined that Plaintiff had a limited range of motion in terms of her cervical spine.  (ECF No. 10, pp. 10-11.)  The ALJ summarized Dr. Van Kirk's August 19, 2022, medical opinion as follows:

> On August 19, 2022, Dale H. Van Kirk, M.D., performed a consultative examination and opined that the claimant has no limitations in standing and/or walking, sitting, manipulative

> activities, or environmental factors and that an assistive device is not medically necessary. Dr. Van Kirk also opined that the claimant should be able to lift and carry 10 pounds frequently and 20 pounds occasionally, and is limited to frequent postural activities (Ex. 7F).

(AR 32.) Out of the gate, the ALJ found that this opinion was not persuasive for the period of time prior to February 9, 2022.

For the period after February 9, 2022, the ALJ discussed that Dr. Van Kirk supported his opinion by findings during an examination:

> The claimant [has] limited range of motion in the cervical spine, 1+/4 deep tendon reflexes in the bilateral biceps and bilateral patella as well as 1+/4 ankle jerks bilaterally. She had generalized discomfort in the left shoulder girdle including the rotator cuff above and below the acromion but she was still able to go through a full range of motion of the left shoulder. She sat comfortably in the exam chair. She got up and out of the chair, walked around the exam room, and got on and off the bench without difficulty. No limp was detected. No assistive device was present or prescribed. Her Romberg test was normal. Tandem walking with one foot in front of the other was satisfactory. She was able to get up on her toes and heels. She was able to squat down and take a few steps without difficulty (Ex. 7F/4-5).

(AR 32-33.)

For the period following February 9, 2022, the ALJ found that Dr. Van Kirk's opinion was "generally persuasive" because it was generally consistent with the other medical evidence of record beginning on February 9, 2022, the date of the claimant's motor vehicle accident, "which has shown worsening of the claimant's neck pain secondary to degenerative disc disease of the cervical spine as well as left shoulder rotator cuff tendonitis and neuropathy secondary to left cubital tunnel syndrome (Exs. 2F/4-9, 39-40; 4F; 5F; 6F/6-8, 10-12; 8F; 9F/2-5, 8-11; 10F; 12F/2-3). However, the claimant's left shoulder impairment and general complaints of bilateral shoulder pain would warrant frequent reaching overhead with the bilateral upper extremities." (AR 33.)

Though the ALJ acknowledged Dr. Van Kirk's opinion that Plaintiff had a "limited range of motion in the cervical spine" and found his opinion "generally persuasive," Plaintiff argues that the ALJ erred by not expressly including a cervical spine limitation in the RFC.

The Court finds that Plaintiff has cherry-picked one aspect of the ALJ's opinion. To be sure, the ALJ acknowledged that Dr. Van Krik found that Plaintiff had limited range of motion in

22

the cervical spine, but, as quoted above, the ALJ also went through the other findings from Dr. Van Kirk which give further context to Plaintiff's actual limitations. Dr. Van Kirk also described that Plaintiff was able to go through a full range of motion of the left shoulder; she was able to sit comfortably in the exam chair; she got up and out of the chair, walked around the exam room, and got on and off the bench without difficulty; and so on. And while the ALJ found Dr. Van Kirk's opinion generally persuasive for the period beginning on February 9, 2022, the ALJ specifically found that Plaintiff's "left shoulder impairment and general complaints of bilateral shoulder pain would warrant frequent reaching overhead with the bilateral upper extremities." (AR 33.)

Recall, as relevant here, beginning on February 9, 2022, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, and crouch, occasionally crawl, frequently reach overhead with the bilateral upper extremities. (AR 28.)

In light of the foregoing discussion, it appears that the ALJ adequately incorporated Dr. Van Kirk's opinion into the RFC. Again, the RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. The Court finds that the ALJ's RFC assessment include a discussion of the individual's abilities on that basis, including sufficiently discussing and incorporating Dr. Van Kirk's opinion.

Plaintiff's other contentions regarding the incorporation of Plaintiff's testimony or medical opinions from other doctors is unpersuasive for the reasons in the preceding sections.

The ALJ did not err.

### D.      Assessment at Step Five

Plaintiff argues that the ALJ did not ask the VE about job hypotheticals that incorporated Plaintiff's testimony regarding numbness in her hands and feet and pain in her shoulder and neck. (ECF No. 10, p. 19.)   Again, Plaintiff's argument presupposes that the ALJ erred in his assessment/rejection of certain aspects of Plaintiff's testimony. As found above, the ALJ did not err in his analysis of Plaintiff's testimony regarding her symptoms, nor did the ALJ err in his RFC analysis. As such, the ALJ did not err in employing the RFC when engaging in hypotheticals with

the VE.

For these reasons, the ALJ did not err at Step Five.

**E.      Whether There Is an Unadjudicated Period**

Plaintiff argues that at Step Four the ALJ erred in considering the past 15 years for relevant work as opposed to the past 5 years, as provided by updated ruling from the Commissioner. (ECF No. 10, p. 7.) Plaintiff argues that she had no work that qualified as past relevant work in the past 5 years. Plaintiff continues, "[a]s such the ALJ did not address 2021 to 2022. He has provided an unadjudicated period." (Id. at p. 8.) In response, the Commissioner argues that even if it were error to use the past 15 years for relevant work at Step Four, the ALJ nonetheless continued on to Step Five rendering any error at Step Four harmless. (ECF No. 14, pp. 2-3.)

To begin, the Court agrees with Plaintiff that the ruling at issue, SSR 24-2p, was effective as of June 8, 2024. Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work, 89 F.R. 27653-01, 2024 WL 1665873(F.R. Apr. 18, 2024). Plaintiff is also correct that her decision did not become final until February 4, 2025 (AR 6), which is after June 8, 2024, making SSR 24-2p applicable to her case.

While it is not clear whether Plaintiff raised this issue with the Appeals Council when asking for review, even assuming there were an error in applying the previous standard, the Court agrees with the Commissioner that any error was harmless because the ALJ continued on to Step Five and found that there were jobs in the national economy that Plaintiff could perform. For substantially the same reason, the Court finds that any error involving an "unadjudicated period" would affect only a Step Four analysis; because the ALJ continued through Step Five any purported error was harmless.

Accordingly, the ALJ did not err.[6]

/ / /

/ / /

---

[6] Plaintiff generally raises the Ninth Circuit's credit-as-true doctrine, which the Court finds is not applicable to this case. Specifically, the Court does not find that "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Norla Marie Bettencourt. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:    **February 20, 2026**

_____
STANLEY A. BOONE
United States Magistrate Judge